1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA G. BIGGS, | ) 1:06cv0361 OWW NEW (DLB) |
| | ) |
| | ) |
| Plaintiff, | ) ORDER REGARDING PLAINTIFF'S |
| | ) SOCIAL SECURITY COMPLAINT |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, Commissioner | ) |
| of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## **BACKGROUND**

Plaintiff Barbara G. Biggs ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") regarding her application for retirement insurance benefits pursuant to Title II of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, for Findings and Recommendation to the District Court Judge.

## **FACTS AND PRIOR PROCEEDINGS**[1]

Plaintiff filed for retirement insurance benefits on September 26, 2002.  On her application, she indicated that she was not entitled, nor did she expect to become entitled, to a

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

pension or annuity based in whole or in part on work not covered by Social Security.  AR 341-342.  Plaintiff began receiving benefits in November 2002.  AR 330.

The Social Security Administration ("SSA") subsequently determined that the Windfall Elimination Provision ("WEP") applied to the calculation of Plaintiff's benefits.  Due to improper calculation, Plaintiff had been overpaid retirement benefits and was assessed an overpayment in the amount of $610.  AR 344, 347.

On reconsideration, the decision was affirmed.  The SSA explained that because Plaintiff, a former teacher, had been eligible for a pension based on work not covered by Social Security, her benefits had to be calculated using the WEP.  Plaintiff should have been paid a lesser amount of retirement benefits from November 2002 to June 2003.  Of the $611 that she had been overpaid, she still had to pay back $297.  AR 347-350.

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"), and on June 28, 2005, ALJ Michael Haubner held a hearing.  On September 12, 2005, he issued a decision finding that SSA had properly applied the WEP to Plaintiff's retirement benefits.

The Appeals Council denied review on January 27, 2006.  AR 320-323.

Hearing Testimony

ALJ Haubner held a hearing on June 28, 2005, in Fresno, California.  After being advised of her right to representation, Plaintiff confirmed that she wished to proceed pro se.  Plaintiff's husband, James Biggs, also appeared and testified.  AR 469-471.

Plaintiff testified that she withdrew the money in her retirement plan in May 2001.  AR 475.  Her husband stated that she could have taken the money out anytime because it was a savings account, and Plaintiff agreed that she could have taken it out in November 1995, when she stopped working.  AR 476.  Plaintiff testified that she believed that the money in her retirement plan consisted of her contributions, that there were no employer contributions.  AR 478.

The ALJ next asked Plaintiff whether she was asking SSA to waive the remaining balance on the amount she had to repay.  AR 479.  Plaintiff argued that this was not an issue but answered the ALJ's questions.  AR 479-485.

When asked why Plaintiff felt the WEP did not apply, Mr. Biggs explained that this "lump-sum" was not a settlement, there was no employer matching, and that it was "her money." AR 485.  He further testified that this was her savings, and that they left it in there for years thinking it was her savings as she intended to go back to teaching but her health prevented it.  AR 485.  He argued that the SSA should have informed her of the consequences.  AR 486.

Mr. Biggs began reading from a document, and when asked by the ALJ where he got the document, he stated in was in Plaintiff's file.  AR 486.  The ALJ asked to see the document and indicated that it was his research, and that they were not supposed to see it because he wasn't sure whether it applied or not.  The ALJ explained that he needed a copy of Plaintiff's retirement plan to analyze the issue.  The ALJ suggested that they "forget [they] ever saw [it]" because it was only research that he asked his attorneys to perform to see if there was anything on point. AR 487.  Plaintiff responded, "No, I'm not going to forget it.  I might have to go to Federal Court to get a copy of it again, but I'll get it."  The ALJ again explained that she was not entitled to his research, as attorney work product.  AR 488.

The ALJ told Plaintiff that he would hold the record open for two weeks so that she could submit a copy of her retirement plan.  AR 488.

Relevant Evidence

_____The California State Teachers' Retirement System ("CALSTRS") has three components. Under the Defined Benefit Program, a member who has five years of service credit is vested and eligible to receive a lifetime monthly retirement benefit at age 55.  AR 359, 454.  The employee contributes eight percent of their salary to the Dependent Benefit Program, and the employer can pay all or a portion of this contribution.  AR 359, 365.  The employer contributes 8.25 percent of member wages to the Teachers' Retirement Fund, which helps fund the benefits payable to all members.  AR 365.  The employer contribution to the Teachers' Retirement fund are not credited to individual members' Defined Benefit accounts.  The Defined Benefits contributions, plus interest, are refundable upon termination.

One-fourth of the 8 percent employee contribution is allocated to the second component-the Defined Benefit Supplement Program.  This account provides additional retirement income

3

based on the amount in the account.  AR 359.  These contributions are refundable one year after

termination of employment and upon refund of the Defined Benefit Program.

The third component of CALSTRS is an optional savings opportunity called the

Voluntary Investment Program.  This program allows members to automatically save a pre-taxed

portion of their earnings and invest it in one of 12 funds or manage it themselves.  AR 380.

The CALSTRS Member Handbook also contains an explanation as to how CALSTRS

may reduce Social Security Benefits, including information about the WEP.  AR 384-385.

Plaintiff worked as a teacher and paid into CALSTRS.  She also had several years of

earnings paid into the Social Security System.  AR 344, 456, 466-467.  She turned 55 on October

22, 1995, and stopped working altogether on or about October 30, 1995.  AR 77.  Her June 2000

CALSTRS statement indicated that she had 9.433 service credit years.  AR 456.

In May 2001, she withdrew her contributions to CALSTRS in a lump sum payment of

$17,197.60 (after tax and other deductions).  AR 343.

ALJ's Finding

After analyzing the law and the evidence, the ALJ determined that Plaintiff's retirement

benefits were subject to the WEP offset and that she was overpaid benefits initially.  Although

she was not at fault in creating the overpayment, her testimony about her family's expenses and

income shows that she had the means to repay the overpayment.  However, the overpayment had

already been collected, making the issue of waiver moot.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision

to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

the Court must determine whether the decision of the Commissioner is supported by substantial

evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla,"

*Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

*Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

401.  The record as a whole must be considered, weighing both the evidence that supports and

1   the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993,

2   995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must

3   apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

4   This Court must uphold the Commissioner's determination that the claimant is not disabled if the

5   Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

6   substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

7   Cir. 1987).

8                                   **LEGAL STANDARDS**

9            For purposes of the Social Security Act, wages upon which an individual pays Social

10  Security taxes are "covered" wages and those upon which an individual pays no Social Security

11  tax are "noncovered." *Das v. Dept. Health & Human Servs.*, 17 F.3d 1250, 1253, n.1 (9th Cir.

12  1994). The WEP, codified at 42 U.S.C. § 415(a)(7), modifies the standard formula for

13  calculating monthly Social Security retirement benefits. The provision applies where a wage

14  earner with earnings covered by the Social Security system also has "non-covered" earnings,

15  typically from federal and state civil service employment. It was enacted to eliminate the

16  unintended benefits windfall that accrued to workers with both covered and non-covered

17  earnings (i.e., eligibility for both Social Security retirement and a civil pension). *Rudycoff v.*

18  *Apfel*, 193 F.3d 579, 580-581 (2nd Cir. 1999). Courts have found the WEP constitutional

19  because it is rationally related to legitimate goals. *Id*. at 1255-1256.

20           The WEP applies to individuals who attain 62 after 1985 and first become eligible after

21  1985 for a monthly period payment based on non-covered earnings. 42 U.S.C. § 415(a)(7)(A)-

22  (B). A claimant becomes "eligible" for a pension at the time he satisfies all prerequisites for the

23  payment of benefits. *Das*, 17 F.3d at 1254.

24           It is the task of the Secretary to interpret and apply the Social Security Act. *Schweiker v.*

25  *Gray Panthers*, 453 U.S. 34, 43 (1981). Accordingly, the Court must give considerable weight to

26  the Secretary's construction of the Act. *Chevron U.S.A., Inc. v. Natural Resources Defense*

27  *Council, Inc.,* 467 U.S. 837, 844 (1984). The Court cannot substitute its own construction for

28  that of the Secretary where the Secretary's construction is reasonable. *Id.*, *Das*, 17 F.3d at 1254.

1    The Court must also give deference to the Commissioner's interpretation of his own

2 regulations and policy. *Warre v. Barnhart*, 439 F.3d 1001, 1005 (9th Cir. 2006)

3 (Commissioner's plausible interpretation of regulations are subject to deference); *US v. Mead*,

4 533 US 218, 234 (2001) (Courts give a degree of deference to an agency's policy interpretation

5 given the specialized knowledge of the agency and the value of uniformity).

6    In her complaint, Plaintiff argues (1) that the ALJ incorrectly focused on the issue of

7 overpayment rather than whether the SSA properly applied the WEP in calculating her retirement

8 benefits; (2) that the ALJ improperly prevented her from seeing a document in her file; and (3)

9 that applying the WEP in her case violated her right to equal protection.

10                            **DISCUSSION**

11 A.    Application of the WEP to Plaintiff's Benefits

12 _____The main contention of Plaintiff's complaint is that the WEP should not have been

13 applied to her benefits because, as she alleges, the withdrawn money came from a savings

14 account, rather than a pension account.

15    In calculating a claimant's benefit amount, the SSA considers the amount of a claimant's

16 monthly pension (or the amount prorated on a monthly basis) that is attributable to the claimant's

17 non-covered work after 1956 that she is entitled to for the first month in which she is

18 concurrently entitled to Social Security benefits. 20 C.F.R. § 404.213(b). If a claimant's pension

19 is paid in a lump-sum, SSA will allocate it proportionately as if it were paid monthly. 20 C.F.R.

20 § 404.231(b)(1). According the SSA's Program Operations Manual System ("POMS")

21 RS00606.364(A)(2)(2):

22        [w]ithdrawals of the employee's own contributions and interest made after the
         employee is eligible to receive a pension are considered a lump-sum pension for
23        WEP purposes.

24 Although POMS is a policy manual and does not have the force of law, it is persuasive authority.

25 *Hermes v. Sec'y of Health & Human Serv.*, 926 F.2d 789, 791 n. 1 (9th Cir. 1991).

26    As touched upon above, a beneficiary is considered "eligible for a monthly pension in the

27 first month for which [she met] all requirements for the pension except that [she was] still

28 working or had not yet retired." 20 C.F.R. § 404.213(a)(3). This interpretation was upheld in

6

*Das*, 17 F3d at 1254.  Here, as the ALJ correctly found, Plaintiff was eligible for a CALSTRS

pension on her 55th birthday, October 22, 1995, since she had least five years of service at that

time.  AR 332.   Therefore, she was 62 after 1985 and was first eligible for a pension based on

her non-covered earnings after 1985, making her benefits subject to the WEP.  AR 456, 463; 42

U.S.C. § 415(a)(7)(A)-(B).

The ALJ then characterized the May 2001 withdrawal of funds as a lump-sum pension for

WEP purposes.  AR 332.  This is certainly a reasonable conclusion pursuant to the terms of

POMS RS00605.364(A)(2)(2), as Plaintiff withdrew her contributions *after* she first became

eligible for a CALSTRS pension in October 1995.

Plaintiff characterizes the account from which the money was withdrawn as a savings

account, based on the fact that there were no employer contributions, and therefore contends that

she did not receive a "lump-sum" pension when she withdrew the money.  The application of the

WEP is not dependent on the characterization of her withdrawal.  Rather, as explained above, the

WEP applies because Plaintiff was 62 after 1985 and was first eligible for a pension based on her

non-covered earnings after 1985.  AR 456, 463; 42 U.S.C. § 415(a)(7)(A)-(B).

There is nothing unreasonable in the SSA's interpretation and application of the WEP to

Plaintiff's benefits, and the Court must therefore uphold the ALJ's findings.  *Chevron U.S.A.,*

*Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844 (1984).

Insofar as Plaintiff contends that the application of the WEP violates her rights to equal

protection and due process, her argument is without merit.  Plaintiff argues the if the *Das*

decision applies only to Californians, then her equal protection rights have been violated.  She

states, "[a]pparently this authorizes SS to consider my withdrawal of my money from my

retirement savings as a lump-sum pension for WEP purposes."  Opening Brief, at 5.  Her

argument appears aimed at the ALJ's conclusion that "[i]n California, the *Das* decision is

controlling for interpretation of the WEP regulations."  AR 332.  Indeed, decisions of a Circuit

Court of Appeal are binding in all districts within the circuit, so that a decision of the Ninth

Circuit Court of Appeal would be controlling on all claimants within the Ninth Circuit, including

California.  In fact, there are many areas where the Ninth Circuit, and therefore California, is

bound by legal interpretations that differ from other parts of the County.  *See eg. Chavez v.*

*Bowen*, 844 F.2d 691 (9th Cir. 1988).  Such is the nature of the Federal judicial system.

Moreover, as explained above, the characterization of her withdrawal does not affect the

applicability of the WEP in the first place.  In any event, *Das* found the WEP constitutional

because it is "rationally related to the achievement of [the] legitimate goal[] of eliminat[ing] a

windfall to individuals who are eligible to receive pensions based on both covered and

noncovered employment."  *Das*, 17 F.3d at 1255.

B.     Overpayment

Plaintiff next argues that the ALJ incorrectly focused on the "wrong issue" of

overpayment.  She contends that the ALJ said he knew he was focusing on the wrong issue, but

that he was not prepared for the WEP issue.  As with other alleged statements and issues,

Plaintiff states "[w]e do not find this in the transcript."  Opening Brief, at 2.  A review of the

hearing transcript, though, explains why the ALJ discussed the overpayment issue and reveals

that, contrary to Plaintiff's suggestion, the ALJ addressed the issue of application

of the WEP.

When Plaintiff indicated that she wanted to "skip on that" issue, the ALJ explained that

he had to discuss the issue of overpayment and waiver because it was one of three issues he had

to decide.  AR 478-479.  The SSA assessed an overpayment in its reconsideration notice,

therefore making it an issue for the ALJ.  AR 347-350.  Moreover, by contending that the WEP

should not have been applied to her benefits, Plaintiff implicitly argued that the overpayment

should be waived.

Nevertheless, the ALJ thoroughly examined the issue of application of the WEP.

Plaintiff explained why she believed the WEP did not apply and her characterization of the

withdrawal.  AR 475-476, 478, 485-486.  The ALJ also held the record open so that Plaintiff

could submit her retirement plan handbook.  AR 472-473, 488, 490.

C.     Documents

Finally, Plaintiff believes that the ALJ denied her access to certain documents in her file.

She appears to be referring to the document from which her husband began to read at the hearing.

AR 486.  When the ALJ what document he was reading from, he responded, "this one right here, RS006."  AR 486.  The ALJ reviewed the document and indicated that it was research from his staff and that he was not sure whether it applied to her case or not.  AR 486-487.  Plaintiff and her husband continued to argue with the ALJ over disclosure of the document.  AR 487-489.

She now contends that the documents were her property and might have been highly valuable to her.  She further contends that she should have been allowed to form her own opinion as to whether the documents applied to her case or not.

Plaintiff's argument is wholly without merit and clearly misunderstands the adjudicatory process.  To the extent that the information was research, Plaintiff was not entitled to it.  Judges, both administrative and judicial, often perform research prior to a hearing to ensure an understanding of the issues and help guide the questioning.  This is simply preliminary research that may or may not apply.  Just as litigants in a court of law are not entitled to a judge's preliminary research, claimants appearing before an ALJ are not entitled to information that he has accumulated to assist him in making his decision.  The heart of a judge's duty involves deciding what law applies, and contrary to Plaintiff's suggestion, she has no right to review this information and draw her own conclusion.  She is certainly entitled to perform her own research and form her own conclusions.

To the extent that the documents at issue are POM documents, such documents are publicly available.

## **RECOMMENDATION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be DENIED and that JUDGMENT be entered for Defendant Jo Anne B. Barnhart and against Plaintiff Barbara Biggs.

These findings and recommendations will be submitted to the Honorable Oliver W. Wanger pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fifteen (15) days after being served with these findings and recommendations, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  **April 10, 2007**                    _____ **/s/ Dennis L. Beck** _____
                                        UNITED STATES MAGISTRATE JUDGE